Victor CRICHTON, Plaintiff,

v.

COMMUNITY SERVICES ADMINISTRATION, et al., Defendants.

No. 81 CIV. 5319 (LBS).

United States District Court,
S.D. New York.

July 6, 1983.

Giblin & Giblin, Paul J. Giblin, Jr., Hackensack, N.J., for plaintiff.

Rudolph W. Giuliani, U.S. Atty., Edward G. Williams, Asst. U.S. Atty., New York City, for defendants.

## OPINION

SAND, District Judge.

Victor Crichton, the plaintiff in this action, seeks damages and attorneys' fees based on the alleged failure of his former employer, the Community Services Administration ("CSA"), to turn over five specific documents in compliance with The Privacy Act of 1974 ("the Privacy Act" or "the Act"), 5 U.S.C. § 552a. Plaintiff and the defendant Community Services Administration have submitted cross motions for summary judgment pursuant to Fed.R.Civ.P. 56.[1] The following facts are not in dispute.

Plaintiff was during the relevant time an employee of the Community Services Administration, an independent executive agency of the federal government which expired by statute on September 30, 1981.

On April 14, 1981, the plaintiff made a request pursuant to the Privacy Act for all documents related to an incident involving himself and Linda Welch, one of the plaintiff's fellow employees at CSA. Pursuant to the request, the plaintiff received, eight days later, a copy of a memo dated April 13, 1981 written by Ms. Welch to Josephine Nieves, the Regional Director of CSA. Welch asked in that memorandum that actions be taken against Mr. Crichton based on an alleged assaultive confrontation at work. No other documents relating to the incident between Mr. Crichton and Ms. Welch existed at the time of the April 14th request.

Plaintiff commenced this lawsuit against CSA on August 27, 1981, alleging, *inter alia,* the willful refusal to comply with a number of prior Privacy Act requests. The complaint also named Josephine Nieves, the Regional Director of the CSA, as an individual defendant, accusing her of unlawfully maintaining and using a "secret file" in violation of the Act. An Assistant United States Attorney was assigned to represent Ms. Nieves and the CSA for purposes of the litigation.

On September 29, 1981, over a month after the filing of this lawsuit and one day before the CSA was to expire by statute, the plaintiff made a second Privacy Act request for "all documents relating to a proposed effort to separate me from the Federal Service." Affidavit of Edward G. Williams, Ex. 9. Four additional documents relating to Mr. Crichton's employment at CSA had been written since his April 14th Privacy Act request. The United States Attorney, acting as counsel for the defendants Nieves and the Community Services Administration, took responsibility for responding to this Privacy Act request in the context of the ongoing lawsuit. The United States Attorney stated at a September 10th, 1982 deposition of defendant Nieves, at which plaintiff's counsel was present, that he had directed at the time the September 29th request was filed that

1. Plaintiff stipulated to the dismissal with prejudice of all claims against the individually-named defendants in this action on January 26, 1982.

Mr. Crichton be informed that any response to such request would come in the context of the ongoing lawsuit. Affidavit of Edward G. Williams, Ex. 10. The CSA never responded formally to plaintiff's September 29th Privacy Act request and plaintiff never filed an administrative appeal based on such failure. The plaintiff discovered the existence of the four additional documents that form the basis of this suit during the course of this litigation on or about March 18th, at which point the documents were made available to the plaintiff for the first time.

Plaintiff asserts three claims in his summary judgment motion. First, that Ms. Nieves maintained a "secret file" on the plaintiff in violation of the Privacy Act and applicable CSA regulations. Second, that the defendant violated the Act by its failure to turn over the five documents pursuant to his April 14, 1981 and September 29, 1981 Privacy Act requests. Finally, plaintiff asserts that he is entitled to attorneys' fees on the grounds that this litigation was necessary to force compliance with his Privacy Act requests and to obtain the five documents at issue in this suit.

The Privacy Act of 1974 was passed in part to permit individuals to determine what records pertaining to them are collected and maintained by a federal agency, and to permit individuals to gain access to such records. Privacy Act of 1974, Pub.L. No. 93–579, § 2, 88 Stat. 1896 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 2177. The Act allows individuals to seek access to any records pertaining to them that are kept in a federal agency's system of records.[2] 5 U.S.C. § 552a(d)(1). Agencies are required to publish in the Federal Register at least annually a notice of existence of all systems of records maintained by the agency, § 552a(e)(4), and to promulgate rules

that establish procedures allowing individuals to gain access to such records, § 552a(f).

The Act provides a civil remedy where the agency refuses to comply with an individual's request for access to records, § 552a(g)(1)(B), or where the agency fails to comply with any other provision of the Act or administrative rule "in such a way as to have an adverse effect" on the individual, § 552a(g)(1)(D). Under the CSA regulations applicable at the time, all inquiries were to be answered within thirty working days of their receipt, absent unusual circumstances. CSA Privacy Act Regulations, 45 C.F.R. § 1006.3(e) (1981).

■ Plaintiff's first allegation is that the maintenance by Ms. Nieves of a "secret file" separate from the CSA official files constituted a violation of § 552a(e)(4), which requires annual notice and publication of all systems of records maintained by the agency. We find that plaintiff has failed to make out a *prima facie* case in this regard.

Assuming without deciding that Ms. Nieves' personal file was subject to the requirements of the Act, the failure to publish notice of the file in the Federal Register pursuant to § 522a(e)(4) is actionable in a civil suit for damages only where the failure to comply adversely effected the plaintiff. See § 552a(g)(1)(D). Plaintiff asserts no facts in his statement pursuant to Rule 3(g) that support any showing of such adverse affect. See Plaintiff's Statement Pursuant to Local Rule 3(g). Indeed, the sole factual allegation on which this aspect of plaintiff's motion is founded is that Ms. Nieves admitted in her deposition that she *maintained* a file on the plaintiff other than the normal personnel records kept by the agency. *Id.* The mere exist-

---

**2.** For purposes of the Act, "record" is defined as:

"any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular as-

signed to the individual, such as a finger or voice print or a photograph;

and the term "system of records" is defined as:

"a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."

5 U.S.C. §§ 552a(a)(4), (5).

ence of the file without a showing of adverse effect fails to make out a *prima facie* cause of action under § 552a(g)(1)(D). The claim is therefore dismissed.

■ Plaintiff's second allegation, insofar as it is based on the failure to comply with the April 14, 1981 Privacy Act request, is also without merit. It is undisputed that the one document relating to Mr. Crichton that was in existence at the time of his April 14, 1981 Privacy Act request—the letter of complaint from Linda Welch to Josephine Nieves—was turned over to Crichton eight days after the date of the request. The plaintiff testified at deposition that at least two of the other four documents that form the basis of this action should have been turned over pursuant to the April 14th request, even though they did not exist at the time the request was made. Affidavit of Paul J. Giblin, Jr., Ex. 9, at 185–87. In support of this position, counsel for the plaintiff proffered at oral argument the theory that a Privacy Act request carries with it a prospective obligation to turn over any relevant materials that may come into existence after the date of the request.

We must reject this view. Not only is there no support for it in the decisions that have interpreted the Act, but such a prospective obligation would place an intolerable administrative burden on an agency. It would encourage the routine filing of requests relating, for example, to an employee's future job performance. Such a prospective obligation would place too great a burden on an agency and, indeed, would as a practical matter be unenforceable. The Act and the regulations make clear in setting out the procedures for requesting information that the individual seeking such information must take an affirmative step to alert the agency to the request before the agency is obliged to respond. See 5 U.S.C. § 552a(f); 45 C.F.R. §§ 1006.3–1006.5. After a response is forthcoming, the agency should be deemed to have complied until alerted again by a new request. We find, therefore, that a request under the Act carries no prospective obligation to turn over new documents that come into exist-

ence after the date of the request, and that CSA fully complied with plaintiff's April 14, 1981 request.

■ The failure on the part of CSA or the government to respond to plaintiff's September 29, 1981 request in a timely fashion raises more difficult problems that cannot be resolved on the undisputed facts and poorly pleaded papers currently before the Court. Both parties to this action appear to believe that this aspect of the dispute can be resolved solely by reference to the dates on which the Privacy Act requests were filed, the date of the commencement of this litigation, and the dates on which the five documents in question were eventually made available to the plaintiff. There remain, however, a number of either disputed or unaddressed facts necessary to resolve this outstanding issue.

For example, the September 29th Privacy Act request was made subsequent to the commencement of this litigation, and was directed to Ms. Nieves, a party defendant in this action. Under these circumstances, the United States Attorney representing both Ms. Nieves and CSA directed that Mr. Crichton be informed that any response to the request would come in the context of the litigation. The record does not reveal, however, whether Crichton consented to this arrangement and understood it to be a voluntary abandonment of his administrative request under the Privacy Act; or, whether he understood this to mean simply that the United States Attorney, acting on behalf of CSA, would take responsibility for responding to the September 29th request in compliance with the Act.

Also left unaddressed by the parties are the facts underlying the government's failure to comply with the September 29th Privacy Act request in a timely fashion. One explanation may be that the United States Attorney believed that compliance would prejudice his client's interests with respect to the ongoing litigation and claims unrelated to the Privacy Act. Or the United States Attorney may have been of the view that the documents were themselves beyond the reach of this Privacy Act re-

quest. Alternatively, the documents may have been withheld for failure on the part of the plaintiff to pursue his administrative remedies with the CSA. Finally, the failure to comply may simply have been an unfortunate and unintended result of the confusion surrounding the closing of the CSA, which occurred one day after the September 29th request was made.

In addition, the record fails to disclose the circumstances surrounding the turning over of the last four documents on March 18th, 1982. Were the documents provided to the plaintiff pursuant to his formal September 29th Privacy Act request, as part of the discovery process in this litigation, or in satisfaction of a partial settlement of plaintiff's other claims?

Given the great number of factual matters not addressed, the Court is simply not in a position to determine, at this stage of the proceedings on cross motions for summary judgment, whether (1) there was an obligation to comply with the September 29th Privacy Act request; (2) whether plaintiff's failure to appeal the lack of response to his September 29th request was justified by the United States Attorney's representation that the plaintiff should look to him for compliance with the request; (3) whether the defendant was justified in failing to respond to the September 29th request because of the ongoing litigation; and (4) whether the eventual turning over of the documents was causally linked to the litigation in such a fashion as to form the predicate for an award of attorneys' fees.

Defendant's motion for summary judgment with respect to plaintiff's claims of a "secret file" and defendant's alleged failure to comply with the March 14th Privacy Act request is hereby granted, and these claims are dismissed. In all other respects, the parties' cross motions directed to the alleged failure to comply with the September 29th Privacy Act request and for attorneys' fees are denied. The case is set for trial on October 3rd, 1983.

SO ORDERED.